1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN M. WARD, Trustee of the Al-Pheus Ward Trust Dated 4/3/2010, | Case No. 14-cv-00565 NC |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| WELLS FARGO HOME MORTGAGE, INC., and Does 1 through XXX, | Re: Dkt. No. 47 |
| Defendants. | |

Before the Court is Wells Fargo's motion to dismiss plaintiff Dawn Ward's First Amended Complaint.  Plaintiff alleges wrongdoing by Wells Fargo in contracting with Al-Pheus Ward, who is now deceased, for a mortgage.  Because plaintiff has not cured certain deficiencies in her prior complaint and fails to sufficiently allege new causes of action, the Court grants Wells Fargo's motion to dismiss with prejudice as to plaintiff's claims for predatory lending, violation of California Civil Code § 2923.5, intentional infliction of emotional distress, and negligence.

The Court also dismisses plaintiff's other claims for declaratory relief, breach of the implied covenant of good faith and fair dealing, and constructive and promissory fraud.  As the deficiencies in these remaining claims may be cured by the allegation of other facts, the Court dismisses them with leave to amend.

## BACKGROUND

Plaintiff alleges that Al-Pheus Ward entered into a contract for a mortgage with Wells Fargo Home Mortgage in 2007.  Dkt. No. 46 at ¶¶ 5-9.  Plaintiff alleges that at the time of contracting for the $285,000 mortgage, Ward made less than $30,000 per year and "was suffering from a psychiatric disability which ultimately led to his involuntary confinement in a locked psychiatric ward."  *Id.* at ¶ 7.  Plaintiff further alleges that the mortgage was "a negative amortization loan characterized by an Option ARM with a very high, above-market interest rate."  *Id.* at ¶ 9.

Plaintiff alleges that on April 3, 2010, Ward transferred title to the property from himself to the Al-Pheus Ward Living Trust, and named Dawn M. Ward as Successor Trustee upon his death.  *Id.* at ¶ 10.  Ward also "executed a Third Party Authorization directing the lender and its agents" to cooperate with plaintiff in matters related to the mortgage.  *Id.* at ¶ 11.  Ward died on January 5, 2012.  *Id.* at ¶ 12.  Plaintiff alleges that she repeatedly informed Wells Fargo "that Al-Pheus Ward was deceased and that plaintiff, as the Successor Trustee, was now the party to whom any communications related to the real property should be directed."  *Id.* at ¶ 16.  Despite this, plaintiff alleges that neither Ward nor plaintiff Trustee ever received any notice of default from Wells Fargo.  *Id.* at ¶ 19.

After Ward's death, plaintiff alleges that she repeatedly requested information from Wells Fargo regarding the mortgage and "was fully prepared to and sought to make any payments due on this mortgage . . . ."  *Id.* at ¶ 20.  Plaintiff alleges that she had a string of communications with various Wells Fargo employees who gave her conflicting information about the status of the mortgage, and "continued to rebuff all of [plaintiff's] inquiries" into how she could make payments on the mortgage.  *See id.* at ¶ 24.

Eventually, plaintiff paid Wells Fargo the amount of money it demanded to reinstate the mortgage and to void the move to foreclose the property by auction.  *Id.* at ¶ 53.

Plaintiff filed this lawsuit on December 20, 2013, in California state court.  Dkt. No. 1 at 17.  On February 6, 2014, Wells Fargo removed the action to federal court based on diversity and federal question jurisdiction.  Dkt. No. 1.  Both plaintiff and Wells Fargo

1  consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  Dkt. Nos. 12,

2  21.  The Court granted in part Wells Fargo's motion to dismiss plaintiff's initial complaint.

3  Wells Fargo now moves to dismiss with prejudice plaintiff's First Amended Complaint.

**LEGAL STANDARD**

5  A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

6  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a

7  motion to dismiss, all allegations of material fact are taken as true and construed in the light

8  most favorable to the non-movant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

9  Cir. 1996).  The Court, however, need not accept as true "allegations that are merely

10  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis.*

11  *Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not allege

12  detailed factual allegations, it must contain sufficient factual matter, accepted as true, to

13  "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the

15  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

16  *Iqbal*, 556 U.S. 662, 678 (2009).

17  If a court grants a motion to dismiss, leave to amend should be granted unless the

18  pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203

19  F.3d 1122, 1127 (9th Cir. 2000).

**DISCUSSION**

21  **A.    Declaratory Relief**

22  In its prior order, this Court denied plaintiff's declaratory relief claim because it

23  addressed past wrongs and not future rights related to the subject property.  Dkt. No. 44 at

24  6-7.  Indeed, "[d]eclaratory relief operates prospectively to declare future rights, rather than

25  to redress past wrongs."  *Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan*,

26  150 Cal. App. 4th 1487, 1497 (2007).  Still, the Court gave plaintiff leave to amend the

27  claim to "clarify that she seeks a declaration regarding the parties' respective rights to the

28  subject property going forward, rather than to declare that Wells Fargo has committed past

1  wrongs." Dkt. No.44 at 7.

2       Nevertheless, plaintiff's claim for declaratory relief in the First Amended Complaint

3  is identical—word for word—to the declaratory relief claim in the initial complaint.

4  *Compare* Dkt. No. 1, Ex. A, at ¶¶ 39-42 *with* Dkt. No. 46 at ¶¶ 55-58. In her opposition

5  brief, plaintiff apologizes to the Court for "erroneously submit[ing] an unrevised/unedited

6  version of this claim" and seeks leave to amend the claim to conform to the Court's earlier

7  ruling. Dkt. No. 51 at 4.

8       Because the Court has not determined that this cause of action "could not possibly be

9  cured by the allegation of other facts," the Court grants Wells Fargo's motion to dismiss

10 plaintiff's declaratory relief claim with leave to amend. *See Lopez*, 203 F.3d at 1127.

11 Plaintiff must amend this claim in accordance with the Court's prior order granting Wells

12 Fargo's motion to dismiss plaintiff's initial complaint. *See* Dkt. No. 44.

13 **B.   Breach of Implied Covenant of Good Faith and Fair Dealing**

14      The duty of good faith and fair dealing is implied by law into every contract,

15 functioning "as a supplement to the express contractual covenants, to prevent a contracting

16 party from engaging in conduct which (while not technically transgressing the express

17 covenants) frustrates the other party's rights to the benefits of the contract." *Gonzalez v. JP*

18 *Morgan Chase Bank, N.A.*, No. 14-cv-2558 EMC, 2014 U.S. Dist. LEXIS 152674, *19-20

19 (N.D. Cal. Oct. 28, 2014) (quoting *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218

20 Cal. App. 4th 1230, 1244 (2013)).

21      Put differently, the implied covenant protects only the "express terms of the

22 agreement," and "cannot impose substantive duties or limits on the contracting parties

23 beyond those incorporated in the specific terms of their agreement." *Id.* (citing *McClain v.*

24 *Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008). Still, a "breach of a specific

25 provision of the contract is not a necessary prerequisite" to a breach of an implied covenant

26 of good faith and fair dealing." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th

27 Cir. 1999) (citing *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373

28 (1992)).

In the foreclosure context, violations of this duty involve specific contract terms. These terms can relate to a loan servicer's decision to foreclose despite a borrower's compliance with specific provisions of a trial modification plan, *Erickson v. PNC Mortgage*, 2011 WL 1743875, at *2 (D. Nev. May 6, 2011) (denying motion to dismiss breach of good faith and fair dealing claim), or a servicer's decision to foreclose despite the existence of a servicer participation agreement prohibiting foreclosure while a loan modification application was pending, *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *5 (D. Mass. Apr. 22, 2011) (same).

In addition, courts have also denied motions to dismiss good-faith-and-fair-dealing claims where the loan servicer refused to disclose to the borrower the reinstatement or payoff amounts due to cure default.  *See, e.g., Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1188 (C.D. Cal. 2011) (finding reference to "applicable law" in deed of trust meant Cal Civ. Code § 2924, which requires the beneficiary to report how much borrower owes).  And at least one court found that "discouraging partial payments and covertly pursing foreclosure while assuring [the borrower] of a pending modification" could amount to bad faith dealing.  *Koontz v. Wells Fargo, N.A.*, 2011 WL 1297519, at *6-8 (S.D.W.Va. Mar. 31, 2011) (deed of trust constituted the contract).

Here, while plaintiff states that Wells Fargo breached the implied covenant of good faith and fair dealing, she neither identifies the enforceable contract that serves as the basis for her claim nor the express terms of the agreement that the implied covenant protects. Instead, under the heading "Second Cause of Action (Breach of Covenant of Good Faith and Fair Dealing)," plaintiff incorporates the allegations in the preceding paragraphs, makes five references to an ambiguous "contract" in several different contexts, and concludes: "Defendant's conduct has breached the covenant of good faith and fair dealing inherent in any contract."  Dkt. No. 46 at ¶ 61.  Such vague, yet conclusory allegations cannot withstand a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

However, plaintiff does state in her opposition to Wells Fargo's motion to dismiss that plaintiff's breach-of-good-faith claim "is not only predicated on defendant's conduct

1   related to the loan modification, but also on its course of objectively unreasonable conduct
2   related to the contract itself." Dkt. No. 51 at 5.  This alleged conduct involved "refus[ing]
3   to reveal the amounts due under the mortgage so that any default could be cured." *Id.*
4   Plaintiff alleges that this "made it impossible for plaintiff to perform the contract on behalf
5   of decedent." *Id.*

6      Just as in *Susilo*, plaintiff may have a viable claim for breach of good faith and fair
7   dealing on account of Wells Fargo's refusal to disclose the payoff amounts Ward or the
8   estate owed.  But plaintiff must state this in her complaint— not just in the opposition
9   brief—and identify the contract that serves as the basis for such a claim as well as the
10  express contract terms that the implied covenant protects.

11     Moreover, plaintiff must still establish she has standing to bring this contract-related
12  claim in the first place.  As the Court stated in its prior order, under California law,
13  "plaintiff could bring this action if she is the personal representative of Ward's estate or his
14  successor in interest." Dkt. No. 44 at 4 (citing *Barney v. Aetna Cas. & Sur. Co.*, 185 Cal.
15  App. 3d 966, 973 (1986); *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1094 (9th Cir.
16  2006)).

17     Here, it is not yet clear whether plaintiff satisfies either of these requirements.  While
18  plaintiff states that she brings this cause of action both as the "Special Administrator" to
19  Ward's estate and as an "individual to whom decedent Al-Pheus Ward had assigned his
20  rights pursuant to the contract," Dkt. No. 46 at ¶ 60, she fails to unequivocally allege
21  whether she is Ward's personal representative or successor in interest.  Plaintiff does assert
22  that as the Special Administrator she can commence suits, Dkt. No. 46 at ¶ 3, and that Ward
23  appointed her, through a Third Party Authorization, to "act in his stead" regarding all
24  matters related to the mortgage, *id.* at ¶¶ 4, 60.

25     On the other hand, in her opposition to Wells Fargo's motion to dismiss, plaintiff
26  states that "she has been appointed the Special Administrator of the Estate, with a hearing
27  pending at which she will be appointed Personal Representative." Dkt. No. 51. at 4.  From
28  this, it looks as if plaintiff concedes she is not the personal representative of the estate.  If

plaintiff is bringing this suit as Ward's personal representative, she must say so and explain why she qualifies as such under California law.

In contrast, if plaintiff brings this suit as Ward's successor in interest, she must explain how she qualifies and state she filed the affidavit necessary under California law to commence an action as the successor in interest.  Cal. Civ. Proc. Code § 377.32; *see also Tatum*, 441 F.3d at 1094 (indicating need for successor in interest to satisfy requirements under Cal. Civ. P. Code §§ 377.30, 377.32); 14 Witkin, Summary 10th (2005) Wills, § 519, p. 592 ("Those seeking to commence or continue an action as a decedent's successor in interest must execute an affidavit [in accordance with Cal. Civ. Proc. Code § 377.32] under penalty of perjury and file it with a certified copy of the decedent's death certificate.").

Because plaintiff has not identified the contract and express terms that the implied covenant protects, and because plaintiff has not demonstrated that she has met the requirements for standing, the Court dismisses plaintiff's second cause of action for breach of good faith and fair dealing with leave to amend.

## C. Predatory Lending

To pursue a predatory lending claim, plaintiff must not only plead sufficient facts, she must also indicate the legal basis for her claim. *Vissuet v. Indymac Mortgage Servs.*, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing "predatory lending" claim because plaintiff failed to indicate any legal basis and court was "left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination of the above").  Plaintiff has failed to do so.  First, she fails to establish any legal basis for her predatory claim, be it federal law, state law, or common law. *Id.* at *3 n.4 ("The fact that there might not be an established, objective definition of the term 'predatory lending' . . . does not change the fact that Plaintiff must specify some legal basis for her cause of action.").

Second, plaintiff fails to plead sufficient facts to support such a claim; instead, she offers conclusory statements that the loan terms were "unconscionable," "predatory and illegal," and based on a "usurious interest rate" on which Ward "had no means with which

1    to repay such a loan." Dkt. No. 46 at ¶¶ 64-67.

2        What is more, plaintiff emphasizes Ward's "psychiatric disability" which plaintiff

3    seems to imply meant a "lack of capacity" on Ward's part at the time he entered into the

4    mortgage agreement with Wells Fargo. *Id.* at ¶ 67. But again, plaintiff's factual allegations

5    remain vague, insufficient, and lacking in any legal basis.

6        Still, at oral argument, plaintiff did mention the Truth In Lending Act as a basis for

7    this cause of action. However, plaintiff repeated many of the same conclusory allegations

8    in her complaint without explaining how TILA can serve as a basis for predatory lending.

9        Accordingly, the Court dismisses plaintiff's third cause of action for predatory

10   lending with prejudice.

11   **D.    Additional Statutory Violations**

12       Plaintiff makes the vague allegation under this fourth cause of action that "defendant

13   has violated numerous state and federal statutes." Dkt. No. 46 at ¶ 69. This is simply not

14   sufficient to maintain a cause of action.

15       Plaintiff does claim under this section of her complaint that Wells Fargo violated

16   California Civil Code § 2923.5, which "requires defendant to contact the borrower and

17   discuss options with the borrower at least thirty days prior to recording a Notice of Default

18   leading to foreclosure proceedings." Dkt. No. 46 at ¶ 70. Plaintiff is correct. *See Mabry v.*

19   *Superior Court*, 185 Cal. App. 4th 208, 213-14, 110 Cal. Rptr. 3d 201, 204 (2010) ("Civil

20   Code section 2923.5 requires, before a notice of default may be filed, that a lender contact

21   the borrower in person or by phone to 'assess' the borrower's financial situation and

22   'explore' options to prevent foreclosure.").

23       However, even if plaintiff's assertions were true, a violation of this state law provides

24   only injunctive relief to postpone the foreclosure sale, and not the right to challenge the

25   validity of the sale. *See Marbury*, 185 Cal. App. 4th at 214; Cal. Civ. Code § 2924.19. In

26   fact, California Civil Code § 2924.19(c), which addresses remedies for violations of

27   § 2923.5, states that a foreclosing entity will not be liable for any violation it has corrected

28   and remedied before the recordation of the trustee's deed. Cal. Civ. Code § 2924.19(c).

1   Here, postponement is moot—plaintiff herself alleges that the loan was reinstated and

2   that Wells Fargo subsequently "void[ed] the pending foreclosure by auction."  Dkt. No. 46

3   at ¶ 53.

4   Given that no foreclosure on Ward's property is pending, and plaintiff cannot claim a

5   remedy for Wells Fargo's alleged violation of § 2923.5, the Court dismisses this cause of

6   action with prejudice.

7   **E.   Intentional Infliction of Emotional Distress**

8   In order to establish a claim for intentional infliction of emotional distress under

9   California law, a plaintiff must show: (1) that the defendant's conduct was outrageous;

10  (2) that the defendant intended to cause or recklessly disregarded the probability of causing

11  emotional distress; and (3) that the plaintiff's severe emotional suffering was; (4) actually

12  and proximately caused by defendant's conduct.  *Austin v. Terhune*, 367 F.3d 1167, 1172

13  (9th Cir. 2004).

14  Outrageous conduct "must be so extreme as to exceed all bounds of that usually

15  tolerated in a civilized community."  *McMahon v. Craig*, 97 Cal. Rptr. 3d 555, 565 (Cal. Ct.

16  App. 2009).  In the foreclosure context, for example, the court in *Bass v. Ameriquest*

17  *Mortgage Company* found that the plaintiff borrower sufficiently stated a claim for

18  intentional infliction of emotional distress where the lender forged the borrower's signature,

19  refused to honor the borrower's rescission, and proceeded with foreclosure when the

20  borrower failed to make payments.  2010 WL 3025167, at *11 (D. Hawaii, Aug. 3, 2010).

21  In contrast, plaintiff in this case claims that Wells Fargo "ignored repeated

22  communications from plaintiff" and "initiated foreclosure proceedings without notice to

23  plaintiff," which "clearly and intentionally created extreme emotional distress."  Dkt. No.

24  46 at ¶ 78.  Plaintiff further contends that Wells Fargo's act of posting a notice of

25  foreclosure auction notice on the property while engaged in mediation with plaintiff

26  constituted "extremely outrageous" behavior.  *Id.* at ¶ 79.

27  This alleged act is not enough to state a claim for intentional infliction of emotional

28  distress.  In fact, courts have dismissed such claims against mortgage servicers for shoddy

customer service in responding to borrower inquiries and requests. *See, e.g., Rodrigues v. JP Morgan Chase Bank*, 2009 WL 3710688, at *8 (D. Conn. Nov. 3, 2009) (servicer had "serious administrative and customer service problems" but did not "intend to cause or recklessly cause Plaintiff's anguish").

Moreover, courts have dismissed these types of claims against mortgage servicers who foreclosed on property in the face of the borrower's failure to make payments. *See, e.g., Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) ("The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim.") (citations omitted); *Mehta v. Wells Fargo Bank, N.A.,* 2010 U.S. Dist. LEXIS 88336, at *48 (S.D.Cal. Aug. 26, 2010) ("The fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context"); *Narramore v. HSBC Bank USA, N.A.*, 2010 WL 2732815, at *7 (D. Ariz. July 7, 2010) (failing to negotiate in good faith and foreclosing without homeowner's knowledge not "intolerable to a civilized society").

Because plaintiff has not alleged facts that can meet the first element of this cause of action, the Court denies plaintiff's claim for intentional infliction of emotional distress with prejudice.

**F.    Constructive and Promissory Fraud**

With regard to plaintiff's sixth cause of action for fraud, plaintiff incorporates by reference allegations she made throughout the complaint, and states simply that the "conduct of defendant and its agents, employees, and assigns, in entering into a mortgage contract in violation of the statutory and legal prohibitions against predatory lending constituted both constructive and promissory fraud." Dkt. No. 46 at ¶ 87. Plaintiff fails to make any factual assertions that satisfy the elements of these two different claims.

**1.    Constructive Fraud**

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [A]s a general principle constructive fraud comprises any act,

omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted). The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

Here, plaintiff has not alleged any facts that suggest Wells Fargo stepped outside the scope of a traditional money-lender relationship and thus created a fiduciary duty. California courts are squarely divided on this issue. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) (gathering cases). But several cases in our District have recently found that a lender may have a special duty of care when engaging in the loan modification process. *See id.* ("While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices."); *Faulks v. Wells Fargo & Co.*, No. 13-cv-02871 MEJ, 2014 WL 1922185, at *8 (N.D. Cal. May 13, 2014) ("the Court is inclined to find that Wells Fargo owed Plaintiff a duty of care in processing his loan modification application.");

1  *Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-cv-00036 LB, 2014 WL 992005 (N.D.
2  Cal. Mar. 12, 2014) (same).

3      Because there may be a set of facts under which Wells Fargo may have owed the
4  decedent Ward a fiduciary duty and thus may have engaged in constructive fraud, the Court
5  grants leave to amend to add a claim for constructive fraud, if plaintiff can allege facts
6  supporting each element.

7          **2.     Promissory Fraud**

8      To bring a claim for the tort of fraudulent misrepresentation, the plaintiff must allege:
9  (1) a misrepresentation; (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to
10 induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Court*,
11 12 Cal. 4th 631, 638 (1996).

12     Promissory fraud is a particular type of fraudulent misrepresentation.  When "a
13 promise is made without such intention, there is an implied misrepresentation of fact that
14 may be actionable fraud."  *Id.*  An action for promissory fraud may lie where a defendant
15 fraudulently induces the plaintiff to enter into a contract.  *Chelini v. Nieri*, 32 Cal. 2d 480,
16 487 (1948).  In those cases, the plaintiff's claim does not depend upon whether the
17 defendant's promise is ultimately enforceable as a contract.  "If it is enforceable, the
18 [plaintiff] . . . has a cause of action in tort as an alternative at least, and perhaps in some
19 instances in addition to his cause of action on the contract."  *Lazar*, 12 Cal. 4th at 638.  But
20 recovery may be limited by the rule against double recovery of tort and contract
21 compensatory damages.  *Id*.

22     Here, plaintiff has not alleged any facts that would support the elements for
23 promissory fraud.  This cause of action is therefore dismissed with leave to amend.  Should
24 plaintiff choose to amend this claim, she must make factual assertions supporting each
25 element.

26 **F.   Negligence**

27     Finally, plaintiff claims that Wells Fargo "failed to properly communicate" with her
28 as well as "failed to act responsibly and has been negligent in its duties to borrower and his

beneficiaries, causing extreme distress and damages." Dkt. No. 46 at ¶¶ 88-89.

Under California law, "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1062 (E.D. Cal. 2010) (quoting *Mendoza v. City of Los Angeles,* 66 Cal.App.4th 1333, 1339 (1998)). Thus, "the existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark,* 231 Cal.App.3d at 1095.

Here, plaintiff brings this cause of action in her capacity as trustee to the Al-Pheus Ward Trust. Dkt. No. 51 at 11. While plaintiff states that Ward transferred title of the property to the trust, plaintiff makes no assertions that Ward assigned his contract rights to the trust. Put differently, the trust is merely the owner of the property and not the borrower; the trust was never a party to the mortgage contract and Wells Fargo owes no duty of care to this third party. *See Rodriguez v. Bank of the West*, 162 Cal. App. 4th 454, 460, 75 (2008) (finding that a bank has a duty to act with reasonable care in transactions with customers, but generally not as to strangers).

Because Wells Fargo does not owe a duty of care to the trust or to plaintiff, much less a duty to properly convey information regarding the mortgage, the Court dismisses this cause of action for negligence with prejudice.

1

**CONCLUSION**

2   The Court grants Wells Fargo's motion to dismiss the above claims in the complaint.

3   The Court denies the claims with prejudice except as to the claims for declaratory relief,

4   breach of the implied covenant of good faith and fair dealing, and constructive and

5   promissory fraud.  Plaintiff must file an amended complaint or a notice of her intention not

6   to amend the complaint within 21 days of this order.

7   The Court denies as moot Wells Fargo's request for judicial notice, as the Court does

8   not rely on any of the requested documents in reaching its conclusion.

9

10   IT IS SO ORDERED.

11   Date:  November 29, 2014

12   _____

13   Nathanael M. Cousins
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28