1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAWN M. WARD,

          Plaintiff,

    v.

WELLS FARGO HOME MORTGAGE, INC.,

          Defendant.

Case No. 14-cv-00565-NC

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 60

Before the Court is Wells Fargo's motion to dismiss plaintiff Dawn Ward's Second Amended Complaint. Plaintiff alleges wrongdoing by Wells Fargo in connection with a mortgage concerning property formerly owned by Al-Pheus Ward, who is now deceased. Plaintiff alleges that despite repeated attempts to obtain mortgage-related information from Wells Fargo so that she can continue to make mortgage payments on Ward's property, Wells Fargo refused to disclose any information to her. Instead, plaintiff alleges Wells Fargo issued a notice of default and moved to foreclose on the property. Wells Fargo moves to dismiss Ward's Second Amended Complaint with prejudice.

The primary issue before the Court is whether plaintiff has standing to bring her claims against Wells Fargo. Wells Fargo argues that it had no obligation to communicate mortgage-related information to plaintiff. After all, plaintiff was not a party to the original mortgage agreement and plaintiff was not appointed the "personal representative" of the estate until well after she made her repeated requests. In response, plaintiff contends that

Case No.: 14-cv-00565-NC

the California probate code allows persons named as the executor in a decedent's will to take steps to maintain and preserve the decedent's estate—which includes taking care of mortgage-related affairs—even before being formally appointed a personal representative by a state probate court.

But because plaintiff has not alleged that Ward named her the executor in his will, the Court finds that plaintiff lacks standing to bring her claim for breach of the implied covenant of good faith and fair dealing.  Likewise, plaintiff's claims of constructive fraud, and unfair and fraudulent practices under § 17200 of the California Business and Professions Code fails.  The Court also dismisses plaintiff's claim for quiet title and strikes her motion for punitive damages.

In contrast, because plaintiff's allegations adequately state a cause of action for promissory fraud, the Court DENIES Wells Fargo's motion to dismiss as to that claim.  As for the other claims, the Court GRANTS Wells Fargo's motion to dismiss with leave to amend, except as to plaintiff's quiet title claim.

## I.    BACKGROUND

### A.    Facts

Plaintiff alleges that Al-Pheus Ward, a Home Depot employee who earned under $30,000 per year, executed a document entitled "Fixed Rate Mortgage Note – Pick-A-Payment Loan" with Wachovia Mortgage, FSB, in 2008.  Dkt. No. 59 at ¶ 8.  Ward then executed a Deed of Trust granting a security interest in his home located at 300 Bell Street, East Palo Alto in the amount of $293,000.  *Id.*

Plaintiff alleges that the Note and Deed of Trust each reference the borrower's ability to permit another person to take over his rights and obligations subject to the Security Agreement.  *Id.* at ¶ 9.  Plaintiff further alleges that the Note and Deed of Trust state the lender may allow delays or changes in the amount of payments of principal and interest due in dealing with third parties.  *Id.*  Plaintiff also alleges that the Note and Deed of Trust reference the lender's "legal duty to give certain notices."  *Id.* at ¶ 10.  Plaintiff alleges that Wells Fargo subsequently merged with Wachovia, and assumed responsibility

United States District Court
Northern District of California

1  for the Note and Deed of Trust.  *Id.* at ¶ 11.

2      Plaintiff alleges that on April 3, 2010, Ward transferred title to the 300 Bell Street

3  property from himself to the Al-Pheus Ward Living Trust, and named plaintiff Dawn M.

4  Ward as Successor Trustee upon his death.  *Id.* at ¶ 12.  Ward also "executed a Third Party

5  Authorization directing the lender and its agents" to cooperate with plaintiff in matters

6  related to the mortgage.  *Id.* at ¶ 11.  Plaintiff alleges that Ward, while on long-term

7  disability, in 2011, requested plaintiff assist him with securing a loan modification under

8  the HAMP program.  *Id.* at ¶ 13.  Plainitff alleges that "the entire HAMP package" and the

9  Third Party Authorization were submitted to and received by Wells Fargo on November

10  18, 2011.  *Id.* at ¶ 15.  Plaintiff alleges that Wells Fargo failed to timely process Ward's

11  loan modification request prior to Ward's death.  *Id.* at ¶ 16.

12      Ward died on January 5, 2012.  *Id.* at ¶ 17.  Plaintiff alleges that she contacted

13  Wells Fargo to inquire about the loan's and loan modification's status, and requested that

14  Wells Fargo direct its communications to her instead of decedent Ward's widow, who

15  Wells Fargo had repeatedly contacted.  *Id.* at ¶ 18.  Plaintiff alleges she spoke to various

16  Wells Fargo individuals between January 2012  and August 2012.  *Id.*  She claims Wells

17  Fargo was on notice of plaintiff's role as Ward's designated agent as to mortgage-related

18  matters.  *Id.* at ¶ 19.

19      Beginning in September 2012 and through November 2013, plaintiff alleges she had

20  a series of unproductive phone conservations with various Wells Fargo representatives in

21  an attempt to obtain information about Ward's mortgage and loan-modification

22  application.  *Id.* at ¶¶ 20-50.  In the Second Amended Complaint, plaintiff identifies the

23  names of the representatives, the date and times of the phone conservation, and a summary

24  of the conservation.  *Id.*  For instance, on September 7, 2012, plaintiff contacted Wells

25  Fargo and spoke with agent Larry Silva who instructed plaintiff to fax the Al-Pheus Ward

26  Living Trust to Wells Fargo.  *Id.* at ¶ 20.  He then advised her that the mortgage would be

27  converted to an "estate account," at which point plaintiff could access information

28  concerning the mortgage and the loan modification.  *Id.*  Plaintiff alleges that she faxed a

United States District Court
Northern District of California

1   copy of the trust to the number Silva provided.

2          Yet on October 19, 2012, another Wells Fargo agent, Troy Wright, confirmed that

3   though the trust had been received, it was insufficient and a court order was required.  *Id.*

4   at ¶ 22.  Plaintiff asked to speak with Wright's supervisor, Andrea Cerna, who then

5   transferred plaintiff to Darnell Thomas.  Thomas stated that he required a copy of the deed

6   to the property.  *Id.*

7          Plaintiff alleges that she complied with Wells Fargo's request for copies of the deed

8   and the trust, and followed Wells Fargo's instructions, but still could not get mortgage-

9   related information; instead, she was redirected from one representative to another in

10  various departments.  *Id.* at ¶¶ 25-29 (describing conversations with agents who directed

11  her to other agents in the loss mitigation, collections, and foreclosure departments).

12  According to plaintiff, some agents even assured her she should have full access to all

13  requested information.  *Id.* at ¶ 24.  During each conversation, plaintiff alleges she

14  conveyed to Wells Fargo her intention to make payments due on the mortgage.  *Id.* at ¶ 28.

15         Nonetheless, plaintiff alleges that neither decedent Ward nor plaintiff ever received

16  any notice of default from Wells Fargo.  *Id.* at ¶ 34.  Plaintiff alleges that on January 31,

17  2013, she learned that a foreclosure sale of the 300 Bell Street property had been scheduled

18  for February 25, 2013.  *Id.* at ¶ 35.  According to plaintiff, she then contacted a Wells

19  Fargo-employed senior attorney, Cynthia Blonigan, who informed plaintiff that Wells

20  Fargo cancelled the pending foreclosure date.  *Id.* at ¶ 36.

21         From March 2013 to May 2013, plaintiff spoke with several Wells Fargo

22  representatives about reinstating the loan and whether foreclosure fees—which had been

23  added to the balance due on Ward's account—could be waived.  *Id.* at ¶¶ 38-41.  On May

24  10, 2013, plaintiff alleges that agent Lesley Stolte agreed to reinstate the loan while

25  reserving other disputed issues for later resolution.  *Id.* at ¶ 40.  Yet plaintiff alleges that

26  Stolte never produced paperwork related to loan reinstatement.  *Id.* at ¶ 42.

27         Later in July 2013, another Wells Fargo employee, Brian Allen, demanded plaintiff

28  provide proof of the ability to pay any amounts deemed due as a condition for loan

United States District Court
Northern District of California

reinstatement. *Id.* at ¶ 45. Plaintiff states she complied with this request. *Id.* In fact, according to plaintiff, throughout September, October, and November 2013, plaintiff advised Wells Fargo that she had funds available to pay any reasonable sums due to reinstate the loan. *Id.* at ¶ 47. Plaintiff alleges that Wells Fargo's agents told her they would investigate modifying the loan and seek to reduce the interest rate. *Id.* at ¶ 48.

By mid-November 2013, plaintiff alleges that Wells Fargo employee Bonnie Shenker advised plaintiff that Wells Fargo would waive the foreclosure fees but that it would not offer any other relief, including waiving the late fees that Wells Fargo continued to add to the mortgage account while refusing to accept plaintiff's payments. *Id.* at ¶ 49. And though Shenker committed to forwarding a reinstatement quote, plaintiff alleges Shenker never did. *Id.*

Plaintiff ultimately alleges that Wells Fargo sought to obtain ownership over the 300 Bell Street property through foreclosure in bad faith. *Id.* at ¶ 52. Plaintiff alleges that Wells Fargo "returned any and all funds tendered by plaintiff" to cure the default on the mortgage because the funds did not include "several thousands of dollars in unidentified and unwarranted fees . . . ." *Id.* at ¶¶ 51, 54. Because the loan remained in default, plaintiff alleges the loan could not be refinanced by plaintiff and continued to accrue interest at the unreasonable rate of 8.5 percent. *Id.* at ¶ 55.

### B.   Procedural History

Plaintiff filed this lawsuit on December 20, 2013, in California state court. Dkt. No. 1 at 17. On February 6, 2014, Wells Fargo removed the action to federal court based on diversity and federal question jurisdiction. Dkt. No. 1. Both plaintiff and Wells Fargo consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 12, 21.

The Court granted in part Wells Fargo's motion to dismiss plaintiff's initial complaint. Dkt. No. 44. The Court found plaintiff lacked standing to bring her claims with the exception of her claim for quiet title. *Id.* at 5. The Court also granted Wells Fargo's motion to dismiss plaintiff's First Amended Complaint with prejudice as to claims

United States District Court
Northern District of California

1   for predatory lending, violation of California Civil Code § 2923.5, intentional infliction of

2   emotional distress, and negligence.  Dkt. No. 56.  But the Court gave plaintiff leave to

3   amend her other claims for declaratory relief, breach of the implied covenant of good faith

4   and fair dealing, and constructive and promissory fraud.  *Id.*

5       Wells Fargo now moves to dismiss with prejudice plaintiff's Second Amended

6   Complaint.

7   **II.   LEGAL STANDARD**

8       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

9   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a

10  motion to dismiss, all allegations of material fact are taken as true and construed in the

11  light most favorable to the non-movant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

12  38 (9th Cir. 1996).  The Court, however, need not accept as true "allegations that are

13  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

14  *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need

15  not allege detailed factual allegations, it must contain sufficient factual matter, accepted as

16  true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

17  550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw

18  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

19  *v. Iqbal*, 556 U.S. 662, 678 (2009).

20      If a court grants a motion to dismiss, leave to amend should be granted unless the

21  pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203

22  F.3d 1122, 1127 (9th Cir. 2000).

23  **III.   DISCUSSION**

24      Plaintiff asserts five claims: that Wells Fargo (a) breached the implied covenant of

25  good faith and fair dealing; (b) engaged in constructive fraud and (c) promissory fraud; (d)

26  violated California Business and Professions Code § 17200; and (e) sought to enforce

27  through illegal means an interest in the 300 Bell Street property in a way that creates a

28  valid cause of action for quiet title.  Plaintiff also seeks punitive damages.

*United States District Court*
*Northern District of California*

**A.      Breached of Implied Covenant of Good Faith and Fair Dealing**

The duty of good faith and fair dealing is implied by law into every contract, functioning "as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Gonzalez v. JPMorgan Chase Bank, N.A.*, No. 14-cv-2558 EMC, 2014 U.S. Dist. LEXIS 152674, *19-20 (N.D. Cal. Oct. 28, 2014) (quoting *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013)).

Put differently, the implied covenant protects only the "express terms of the agreement," and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008)).  Still, a "breach of a specific provision of the contract is not a necessary prerequisite" to a breach of an implied covenant of good faith and fair dealing." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th Cir. 1999) (citing *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992)).

**1.      Express Terms of the Contract**

In the foreclosure context, violations of this duty involve specific contract terms. These terms can relate to a loan servicer's decision to foreclose despite a borrower's compliance with specific provisions of a trial modification plan, *Erickson v. PNC Mortgage*, 2011 WL 1743875, at *2 (D. Nev. May 6, 2011) (denying motion to dismiss breach of good faith and fair dealing claim), or a servicer's decision to foreclose despite the existence of a servicer participation agreement prohibiting foreclosure while a loan modification application was pending, *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *5 (D. Mass. Apr. 22, 2011) (same).

In addition, courts have also denied motions to dismiss good-faith-and-fair-dealing claims where the loan servicer refused to disclose to the borrower the reinstatement or payoff amounts due to cure default. *See, e.g., Susilo v. Wells Fargo Bank, N.A.*, 796 F.

Supp. 2d 1177, 1188 (C.D. Cal. 2011) (finding reference to "applicable law" in deed of trust meant Cal Civ. Code § 2924, which requires the beneficiary to report how much borrower owes).  And at least one court found that "discouraging partial payments and covertly pursing foreclosure while assuring [the borrower] of a pending modification" could amount to bad faith dealing.  *Koontz v. Wells Fargo, N.A.*, 2011 WL 1297519, at *6-8 (S.D.W.Va. Mar. 31, 2011) (deed of trust constituted the contract).

In its prior order, the Court granted Wells Fargo's motion to dismiss as to plaintiff's claim that Wells Fargo breached the implied covenant of good faith and fair dealing: plaintiff had neither identified the enforceable contract that served as the basis for her claim nor the terms of the agreement that the implied covenant protects.  Dkt. No. 56 at 5.

Here, plaintiff identifies the enforceable contract as the Note and Deed of Trust that decedent Ward entered into with Wells Fargo in February 2008.  Dkt. No. 59 at ¶¶ 63, 68, 83.  Plaintiff alleges that Wells Fargo unfairly interfered with this contract's provision allowing decedent Ward (the "borrower") to have another party (plaintiff) assume his rights under the contact.  *Id.* at ¶ 59.  By refusing to provide plaintiff with information to pay the outstanding amounts on the decedent's loan, plaintiff alleges Wells Fargo violated this express term of the contract and interfered with plaintiff's right to receive the benefit of the contract—ownership of the property and the ability to refinance.  *Id.* at ¶ 64.

But this assumption provision itself does not state that Wells Fargo was "required to provide timely information to plaintiff regarding the status of the mortgage and any payments due."  *Id.* at ¶ 62.  It may be that another provision of the Note and Deed of Trust requires this.  Or it may be the case that the contract references "applicable law"; the *Susilo* court interpreted the term "applicable law" in the deed of trust to mean state law requiring the beneficiary to report how much the borrower owes.  796 F. Supp. 2d at 1188 (applying Cal Civ. Code § 2924).  It is this type of express contact term that plaintiff seeks to enforce and which an implied covenant arguably protects.

But without alleging this express term in the complaint, plaintiff does not make a sufficient claim that Wells Fargo breached the implied covenant of good faith and fair

1    dealing when it refused to provide plaintiff with information concerning the loan.

2          **2.    Standing**

3          The Court stated in its two prior orders that plaintiff must still establish she has

4    standing to bring this good-faith-and-fair-dealing claim. Dkt. Nos. 44 at 4, 56 at 6.  Under

5    California law, "plaintiff could bring this action if she is the personal representative of

6    Ward's estate or his successor in interest."  Dkt. No. 44 at 4 (citing *Barney v. Aetna Cas. &*

7    *Sur. Co.*, 185 Cal. App. 3d 966, 973 (1986); *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090,

8    1094 (9th Cir. 2006)).

9          Here, plaintiff alleges that she has standing to assert this cause of action as the

10   personal representative of Ward's estate.  Dkt. No. 59 at ¶ 58.  Wells Fargo disagrees.  It

11   claims it was under no obligation to provide mortgage-related information "without a court

12   order appointing Plaintiff the personal representative" of Ward's estate.  Dkt. No. 60 at 14.

13   Wells Fargo cites to California Probate Code § 8400(a) for the proposition that plaintiff

14   could not administer the estate until the she was appointed personal representative by a

15   probate court.  *See* Cal. Prob. Code § 8400(a) ("[a] person has no power to administer the

16   estate until the person is appointed personal representative . . . [by the probate court]").

17         Indeed, though the property itself is held in the name of the Al-Pheus Ward Living

18   Trust, Ward's loan repayment obligations fall within his estate.  *See* Dkt. No. 56 at 13 (this

19   Court's prior order clarifying that "the trust is merely the owner of the property and not the

20   borrower; the trust was never a party to the mortgage contract").  And as Wells Fargo

21   emphasizes, a California probate court did not appoint plaintiff a personal representative

22   until November 3, 2014, well after she started demanding mortgage-related information

23   from Wells Fargo.  *See* Dkt. No. 59 at ¶ 4 (alleging plaintiff was appointed personal

24   representative in San Mateo County Superior Court).

25         In response plaintiff points to California Probate Code § 8400(b), which provides

26   that "a person named executor in the decedent's will may, before the appointment is made

27   or becomes effective, pay funeral expenses and take necessary measures for the

28   maintenance and preservation of the estate."  Cal. Prob. Code § 8400(b).  In her opposition

1  brief, plaintiff states she was named executor in Ward's will and thus had the legal

2  authority to maintain and preserve Ward's estate, which included accessing mortgage-

3  related information so that she could make mortgage payments.  Dkt. No. 64 at 11.

4         Wells Fargo counters that § 8400(b)'s reference to paying for funeral expenses

5  "clearly contemplates this subsection to be a short term solution to take care of the estate's

6  immediate needs."  Dkt. No. 65 at 5.  Wells Fargo, however, does not cite any authority for

7  its position that an executor without a probate-court appointment has the authority to

8  maintain and preserve a decedent's estate for only six months after a decedent's death.  *Id.*

9  The plain text of the probate code does not state this and the Court does not see a reason

10  why only a six-month period should apply.  In any case, plaintiff alleges she made

11  inquiries into the loan and the loan modification as early as January 2012—the month

12  Ward passed away—which continued in the ensuing months and years.  Dkt. No. 59 at ¶¶

13  18, 20-55.

14         The Court agrees with plaintiff that even without a formal appointment as the

15  personal representative, as an executor named in Ward's will, plaintiff's efforts to access

16  mortgage-related information and submit mortgage payments constituted "necessary

17  measures for the maintenance and preservation of the [decedent's] estate" under the state

18  probate code.  *See* Cal. Prob. Code § 8400(b).  As the personal representative, Wells Fargo

19  should have provided Ward with the information she needed to make loan-payments and

20  informed her about the status of Ward's loan modification application.

21         Still, Ward failed to allege in her Second Amended Complaint that she was named

22  executor in Ward's will.  Without this allegation, Ward cannot maintain that she had

23  standing as Ward's personal representative during the time period preceding her formal

24  appointment.  Accordingly, the Court GRANTS Wells Fargo's motion to dismiss

25  plaintiff's good-faith-and-fair dealing claim with leave to amend.

26     **B.   Constructive Fraud**

27         "Constructive fraud is a unique species of fraud applicable only to a fiduciary or

28  confidential relationship.  [A]s a general principle constructive fraud comprises any act,

United States District Court
Northern District of California

omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000).  In other words, constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship.  *Estate of Gump*, 1 Cal. App. 4th 582, 601 (1991); Cal. Civ. Code § 1573.

Much like other fraud claims, a claim of constructive fraud is subject to heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure.  *Guerrero v. Greenpoint Mortgage Funding, Inc.*, 403 Fed. App'x 154, 156 (9th Cir. 2010).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted).  The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."  *Id.* at 1098.

Plaintiff alleges that by assuring plaintiff repeatedly that it would review the loan modification's status, would work to reduce the interest rate on the loan, eliminate improper fees, and forward information related to the loan, Wells Fargo stepped outside the scope of a traditional money-lender relationship and thus created a fiduciary duty.  Dkt. No. 64 at 16.  California courts are squarely divided on this issue of "when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to

1    loan modification applications and foreclosure proceedings." *See Rijhwani v. Wells Fargo*

2    *Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 U.S. Dist. LEXIS 27516, 2014 WL

3    890016, at *17 (N.D. Cal. Mar. 3, 2014) (gathering cases).

4           But several cases in our District have recently found that a lender may have a

5    special duty of care when engaging in the loan modification process.  *See id.* ("While a

6    lender may not have a duty to modify the loan of any borrower who applies for a loan

7    modification, a lender surely has a duty to submit a borrower's loan modification

8    application once the lender has told the borrower that it will submit it[.]"); *Faulks v. Wells*

9    *Fargo & Co.*, No. 13-cv-02871 MEJ, 2014 U.S. Dist. LEXIS 65808, 2014 WL 1922185, at

10   *8 (N.D. Cal. May 13, 2014) ("the Court is inclined to find that Wells Fargo  owed

11   Plaintiff a duty of care in processing his loan modification application"); *Rowland v. JP*

12   *Morgan Chase Bank, N.A.*, No. 14-cv-0036 LB, 2014 U.S. Dist. LEXIS 32284, 2014 WL

13   992005, at *9 (N.D. Cal. Mar. 12, 2014) (same).

14          Here, plaintiff claims that she submitted a loan modification application under the

15   HAMP program to Wells Fargo on behalf of Ward on November 18, 2011.  Dkt. No. 59 at

16   ¶ 15.  Plaintiff alleges Wells Fargo failed to process this application before Ward's death.

17   *Id.* at ¶ 16.  Plaintiff also alleges that along with the application she submitted a Third

18   Party Authorization to Wells Fargo.  According to plaintiff, Ward executed this Third

19   Party Authorization on November 16, 2011, designating plaintiff as Ward's agent with

20   respect to the mortgage, and "directing and authorizing [Wells Fargo] to communicate

21   directly with [plaintiff]."  *Id.* at ¶ 14.

22          Wells Fargo argues that it never owed a duty of care to plaintiff or the estate as the

23   "relationship between a lending institution and its borrower-client is not fiduciary in

24   nature."  Dkt. No. 60 at 21 (internal quotation marks omitted) (citing *Nymark*, 231 Cal.

25   App. 3d at 1093 n.1).  Additionally, Wells Fargo contends that the Third Party

26   Authorization that plaintiff submitted terminated on January 5, 2012, at Ward's death.  *Id.*

27   at 15 (citing Cal. Civ. Code § 2356(a)(2)) ("Unless the power of an agent is coupled with

28   an interest in the subject of the agency, it is terminated by . . . The death of the principal.").

United States District Court
Northern District of California

1    This Court, following guidance from other cases in this District, finds that lender

2    Wells Fargo did owe a duty of care to borrower Ward.  *See, e.g.*, *Rijhwani*, No. 13-cv-

3    05881 LB, 2014 WL 890016, at *17; *Faulks*, No. 13-cv-02871 MEJ, 2014 WL 1922185, at

4    *8.

5        But on the issue of Wells Fargo's obligation to plaintiff, the Court agrees with

6    Wells Fargo that the Third Party Authorization terminated upon Ward's death.  After all,

7    plaintiff, not being the borrower, had no interest in the loan itself (the subject of the

8    agency).  Thus, on the one hand, Wells Fargo had no obligation to provide loan

9    information that occurred after Ward's death to plaintiff on the basis of her being Ward's

10    agent under the Third Party Authorization.  *See* Cal Civ. Code § 2356(a)(2).

11        On the other hand, if Ward named plaintiff as executor in his will, then as the

12    personal representative, plaintiff could take actions necessary to maintain and preserve

13    Ward's estate.  *See* Cal. Prob. Code § 8400(b).  This includes ensuring that the estate meets

14    its mortgage-payment obligations.  Under these circumstances, Wells Fargo had a duty not

15    to conceal from plaintiff the status of the loan modification application as well as past due

16    amounts on the loan.  Without this information, plaintiff alleges she could not make loan

17    payments or make other efforts to achieve more favorable loan terms.  Plaintiff alleges that

18    Wells Fargo's failure to communicate this financial information to her led to financial

19    harm in the form of improper fees and charges to the mortgage account plaintiff

20    maintained.  *See* Dkt. No. 59 at ¶¶ 89, 95.

21        But because plaintiff does not allege in her complaint that Ward named plaintiff as

22    the executor in the will, plaintiff cannot enforce the duty Wells Fargo owed to the estate

23    and her constructive fraud claim fails.  Accordingly, the Court GRANTS Wells Fargo's

24    motion to dismiss with leave to amend.

25    **C.    Promissory Fraud**

26        "Promissory fraud is a subspecies of the action for fraud and deceit.  A promise to

27    do something necessarily implies the intention to perform; hence, where a promise is made

28    without such intention, there is an implied misrepresentation of fact that may be actionable

United States District Court
Northern District of California

1  fraud." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (internal quotation marks

2  omitted).

3      To state a claim for promissory fraud, a plaintiff must show (1) defendant's

4  misrepresentation, (2) defendant's knowledge of its falsity, (3) defendant's intent to

5  defraud or to induce reliance, (4) plaintiff's justifiable reliance, and (5) resulting damage.

6  *See Lazar*, 12 Cal. 4th at 638-39.

7      Here, plaintiff's allegations, if true, would establish all elements of promissory

8  fraud. As detailed above, plaintiff alleges that in order to foreclose on the property and

9  impose additional fees and charges on the mortgage, Wells Fargo intentionally represented

10 to plaintiff that submitting certain paperwork (e.g., copy of the deed to the property, copy

11 of the trust) would allow Wells Fargo to convert the mortgage into an "estate account,"

12 which would give plaintiff access to mortgage information so she could make payments.

13 Dkt. No. 59 at ¶¶ 20-22. Plaintiff also alleges that Wells Fargo promised her that it would

14 remove improper charges from the loan account and reinstate the loan after it issued a

15 notice of default. Dkt. No. 59 at ¶ 40, 49, 73.

16     Plaintiff alleges that Wells Fargo knew the representations to be false: "[Wells

17 Fargo] never had any intention of fulfilling these promises[.]" Dkt. No. 59 at ¶ 103; *see*

18 *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012) (finding the falsity of a promise, as

19 required for promissory fraud, is "sufficiently pled with a general allegation the promise

20 was made without an intention of performance") (citation omitted).

21     Plaintiff also alleges that Wells Fargo intended to induce plaintiff's reliance and

22 cooperation "in order to secure financial advantage by maintaining an exorbitant (8%+)

23 interest rate and continue adding charges and fees to the account." Dkt. No. 59 at ¶ 104;

24 *see Beckwith*, 205 Cal. App. 4th at 1062 ("An intent to deceive is not an essential element

25 of the cause of action . . . the required intent is an intent to induce action.") (internal

26 quotation marks and citation omitted).

27     Plaintiff further sufficiently alleged actual and justifiable reliance. In a claim for

28 promissory fraud, "[b]esides actual reliance, [a] plaintiff must also show justifiable

1  reliance, i.e., circumstances were such to make it reasonable for [the] plaintiff to accept

2  [the] defendant's statements without an independent inquiry or investigation." *Curley v.*

3  *Wells Fargo & Co.*, No. 13-cv-3805 NC, 2014 U.S. Dist. LEXIS 177338, at *23 (N.D. Cal.

4  Dec. 23, 2014) (citation omitted).  Plaintiff alleges that each Wells Fargo agent she spoke

5  with indicated he or she had the authority to take the various actions promised.  Dkt. No.

6  59 at ¶ 105.  Relying on those assurances, plaintiff cooperated with Wells Fargo's various

7  requests for information and documentation for nearly a two-year period after Ward's

8  death before bringing legal action.  *Id.* at ¶ 104.

9       Finally, plaintiff alleges that as a result of the fraudulent misrepresentations and her

10  reliance, the mortgage account incurred charges in excess of $1900 per month along with

11  over $5,000 in "unexplained charges and fees."  *Id.* at ¶ 106.

12       For the reasons above, the Court finds plaintiff's allegations adequately state a

13  cause of action for promissory fraud.  As to this claim—which is not dependent upon

14  plaintiff's status as the personal representative of Ward's estate—the Court DENIES Wells

15  Fargo's motion to dismiss.

16       **D.     Business and Professions Code § 17200**

17       Plaintiff claims that Wells Fargo violated California Business and Professions Code

18  § 17200, which prohibits unlawful, unfair or fraudulent business acts or practices.  "Each

19  prong of [§ 17200] is a separate and distinct theory of liability."  *Birdsong v. Apple, Inc.*,

20  590 F.3d 955, 959 (9th Cir. 2009).

21       A claim based on the "unlawful" prong of § 17200 incorporates other laws and

22  treats violations of those laws as unlawful business practices independently actionable

23  under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.

24  2000).  Thus, the operative pleading must allege the way in which the practices violated

25  the "borrowed" law by "stat[ing] with reasonable particularity the facts supporting the

26  statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th

27  612, 618-19 (1993).

28       Here, plaintiff makes a claim under § 17200 based on Wells Fargo's unlawful

1    conduct, but fails to identify the "borrowed" law that Wells Fargo allegedly violated. *See*

2    Dkt. No. 59 at ¶¶ 70-80.  Accordingly, the Court GRANTS Wells Fargo's motion to

3    dismiss as to the unlawful prong of § 17200 with leave to amend.

4         Section 17200 also creates a cause of action for a business practice that is "unfair"

5    even if not specifically proscribed by some other law.  *Korea Supply Co. v. Lockheed*

6    *Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  To state a claim based on an "unfair"

7    practice under § 17200, the plaintiff must allege facts that the practice "offends an

8    established public policy or when the practice is immoral, unethical, oppressive,

9    unscrupulous or substantially injurious to consumers."  *Smith v. State Farm Mut. Auto. Ins.*

10   *Co.*, 93 Cal. App. 4th 700, 719 (2001) (internal quotation marks and citation omitted).

11        As to the third prong of § 17200, a business practice is "fraudulent" if "members of

12   the public are likely to be deceived."  *Comm. on Children's Television v. General Foods*

13   *Corp.*, 35 Cal. 3d 197, 211 (1983).  Allegations of fraud under § 17200 must satisfy the

14   heightened pleading standard of Federal Rule of Civil Procedure 9(b*).  Kearns v. Ford*

15   *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  And in instances "[w]here a claim under

16   the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy

17   the heightened pleading requirements of Rule 9(b)."  *Kenery v. Wells Fargo, N.A.*, No. 13-

18   cv-02411 BLF, 2015 U.S. Dist. LEXIS 11389, at *12 (N.D. Cal. Jan. 30, 2015) (citing

19   *Kearns*, 567 F.3d at 1125; *In re Apple In-App Purchase Litig*., 855 F. Supp. 2d 1030, 1039

20   (N.D. Cal. 2012)).

21        Yet regardless of whether a plaintiff brings a claim under the unlawful, unfair, or

22   fraudulent prong of § 17200, he or she must have standing to sue under the state law.  To

23   have standing under § 17200, a plaintiff must "(1) establish a loss or deprivation of money

24   or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that

25   that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that

26   is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322

27   (2011) (emphasis in original); *see* Cal. Bus. & Prof. Code § 17204.

28        Here, the Court is inclined to agree with plaintiff that it was fraudulent and unfair

United States District Court
Northern District of California

1    for Wells Fargo to represent to personal-representative plaintiff that she was not entitled to

2    determine the amount due on the mortgage on Ward's property, and to schedule a

3    foreclosure sale without providing notice to personal-representative plaintiff.  *See* Dkt. No.

4    59 at ¶ 71.  As with prior claims, plaintiff does allege economic injury in the form of

5    additional fees and charges.  The Court also finds that plaintiff described the alleged

6    fraudulent and unfair practices with sufficient particularity to satisfy Rule 9(b): Ward

7    alleges the who, what, and when of each of her conservations with Wells Fargo agents and

8    sufficiently describes the alleged misrepresentations.  *Id.* at ¶¶ 20-54.

9         Nonetheless, the Court will GRANT Wells Fargo's motion to dismiss with leave to

10   amend because plaintiff failed to allege in her complaint that Ward named her as the

11   executor in his will.  Without this allegation, Ward cannot claim that Wells Fargo was

12   obligated to provide her with mortgage-related and foreclosure-related information

13   because she was the estate's personal representative.

14        **E.    Quiet Title**

15        To state a claim for quiet title under California law, plaintiff must include the

16   following in her complaint: "(a) A description of the property that is the subject of the

17   action; (b) The title of the plaintiff as to which a determination under this chapter is sought

18   and the basis of the title; (c) The adverse claims to the title of the plaintiff against which a

19   determination is sought; (d) The date as of which the determination is sought; (e) A prayer

20   for the determination of the title of the plaintiff against the adverse claims." *Wong v. First*

21   *Magnus Fin. Corp.*, No. 09-cv-01612 RMW, 2009 WL 2580353, at *4 (N.D. Cal. Aug. 20,

22   2009) (citing Cal. Code Civ. P. § 761.020).  Courts have clarified that "[a] mortgagor

23   cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones*

24   *v. Stickney*, 219 Cal. 637, 649 (1934).  Thus, tender is required to maintain an action to

25   quiet title unless the "borrower challenges the validity of the underlying debt." *Lona v.*

26   *Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011).

27        In an earlier ruling, the Court found that plaintiff sufficiently pled this claim in her

28   initial complaint by challenging the "validity of the underlying debt."  Dkt. No. 44 at 5.  In

United States District Court
Northern District of California

1    contrast, here in the Second Amended Complaint, plaintiff omits the key allegations that

2    she made earlier to challenge the loan's validity.  *See, e.g.*, Dkt. No. 1 at ¶ 53 (loan was

3    "predatory and illegal"), ¶ 56 (Ward lacked the capacity to enter into the loan).  Even

4    though Wells Fargo emphasized these omissions by plaintiff in its motion to dismiss,

5    plaintiff failed to offer any counter-arguments much less address the quiet title claim in her

6    opposition brief.

7         Because the Second Amended Complaint does not contain the key allegations

8    sufficient to maintain a cause of action for quiet title, the Court GRANTS Wells Fargo's

9    motion to dismiss with prejudice.

10        **F.    Punitive Damages**

11        Wells Fargo moves to dismiss plaintiff's request for punitive damages.

12        Under California law, when a defendant "has been [found] guilty of oppression,

13    fraud, or malice," the court may award punitive damages.  *See* Cal. Civ.Code § 3294.

14    "Malice" is defined as "conduct which is intended to cause injury to the plaintiff" or

15    "despicable conduct which is carried on by the defendant with a willful and conscious

16    disregard of the rights or safety of others."  *Id.* § 3294(c)(1).  "Oppression" is defined as

17    "despicable conduct that subjects a person to cruel and unjust hardship in conscious

18    disregard of that person's rights."  *Id.* § 3294(c)(2).

19        When it comes to corporate defendants, a plaintiff seeking punitive damages must

20    demonstrate the requisite mental state of an officer, director, or managing agent.  *Id.*

21    § 3294(b) ("the advance knowledge and conscious disregard, authorization, ratification or

22    act of oppression, fraud, or malice must be on the part of an officer, director, or managing

23    agent of the corporation."); *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000)

24    (discussing the requirements for imposition of punitive damages upon a corporate

25    defendant); *see also Xerox Corp. v. Far Western Graphics, Inc.,* No. 03-cv-4059-JF, 2004

26    WL 2271587, *2 (N.D. Cal. Oct. 6, 2004) (striking request for punitive damages based on

27    plaintiff's failure to allege any conduct by defendant corporation's officer, director or

28    managing agent).

United States District Court
Northern District of California

1    Here, plaintiff requests punitive damages, but fails to allege any conduct by an

2    officer, director or managing agent of Wells Fargo sufficient to support the imposition of

3    punitive damages against Wells Fargo.  While in her opposition brief, plaintiff states that

4    Wells Fargo's practice of unlawfully selling properties without notice is a "consistent,

5    across-the-board policy," Dkt. No. 64 at 20, she offers no allegations concerning the

6    conduct of an officer, director, or management.

7    Accordingly, the Court will STRIKE plaintiff's punitive-damage request with leave

8    to amend.

9    **IV.   CONCLUSION**

10   The Court DISMISSES all claims in the complaint, with the exception of the

11   promissory fraud claim.  The Court GRANTS leave to amend with respect to all other

12   claims except the quiet title claim.  The Court STRIKES plaintiff's request for punitive

13   damages with leave to amend.  Plaintiff must file an amended complaint or a notice of her

14   intention not to amend the complaint within 21 days of this order.

15   The Court DENIES as moot Wells Fargo's request for judicial notice, as the Court

16   does not rely on any of the requested documents in reaching its conclusion.

17   **IT IS SO ORDERED.**

18

19   Dated:  April 13, 2015                        _____

20                                                NATHANAEL M. COUSINS
                                                 United States Magistrate Judge
21

22

23

24

25

26

27

28